## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 16-** |
| | : | |
| **v.** | : | |
| | : | |
| **STEPHANIE CARETHERS,** | : | |
| | : | **D.C. Code §§ 22-3221(a), 22-3222(a)(1)** |
| | : | **(First Degree Fraud);** |
| | : | **18 U.S.C. § 1344 (Bank Fraud);** |
| | : | **18 U.S.C. § 2 (Aiding and Abetting and** |
| **Defendant.** | : | **Causing an Act to be Done);** |
| | : | **22 D.C. Code §§ 3211(b)(2) and 3212(a)** |
| | : | **(First Degree Theft).** |

# INFORMATION

The United States Attorney informs the Court:

## COUNT ONE

## FIRST DEGREE FRAUD

### Introduction

At all times material to this Information:

1.      Office of Personnel Management ("OPM"), among other duties, managed pension benefits for retired employees of the United States government.  The Civil Service Retirement System ("CSRS") was a retirement system covering federal employees who entered covered federal service before January 1, 1987.  Upon retirement from civil service, the federal employees covered by CSRS became CSRS annuitants and were entitled to CSRS benefits throughout their lifetimes.  In addition, a CSRS annuitant had the option to elect a survivor benefit for his/her spouse; if selected, a spousal benefit allowed for the annuitant's surviving spouse to continue to receive a reduced amount of benefits throughout the spouse's lifetime.

2.      OPM paid retirement annuity benefits to the retired federal government employee only during his/her lifetime; payments ceased upon the employee's death.

3.      OPM paid survivor annuity benefits to the annuitant's spouse only during his/her lifetime; payments ceased upon the spouse's death.

4.      SunTrust Bank was a financial institution with deposits ensured by the Federal Deposit Insurance Corporation ("FDIC").

5.      An individual identified in this Information as "MC" worked for the federal government for over 44 years, from September 1941 to January 1986. From 1941 to 1945, MC worked for the Executive Office of the President for Emergency Management, and then worked for the U.S. State Department from 1945 to 1986. MC died on April 23, 2001.

6.      MC was married to an individual identified in this Information as "JC," who also worked for the United States government (JC was in the Army from 1942 to 1945, and then was employed by two other federal agencies until his retirement in June 1986). JC died on March 7, 2002, surviving his wife by about one year.

7.      MC and JC had two children, one of whom was the defendant STEPHANIE CARETHERS.

### The Scheme

8.      From between in or about 2001 until in or about May 2010, in a continuing course of conduct, in the District of Columbia, the defendant STEPHANIE CARETHERS engaged in a scheme or systematic course of conduct with the intent to defraud and to obtain property of OPM by means of false and fraudulent pretenses, representations, and promises and thereby obtained property of OPM and caused OPM to lose property, such property obtained and lost being in excess of $1,000 in value.

## Purpose of the Scheme to Defraud

9.     It was the purpose of the scheme to defraud that after MC's death, the defendant STEPHANIE CARETHERS pretended that her mother, MC, was living and therefore eligible to collect MC's own retirement annuity benefits as well as the survivor annuity benefits as the "widow" of MC's husband and thereby causing OPM to pay approximately $702,949, which the defendant STEPHANIE CARETHERS used for her own personal benefit and the benefit of third persons.

## Manner and Means

10.     It was part of the scheme that although the defendant STEPHANIE CARETHERS notified Maryland's Division of Vital Records that her mother, MC, died on April 23, 2001, she did not notify OPM.  Unaware of MC's death, OPM paid approximately $495,967 in retirement annuity benefits from 2001 until March 2010 by way of direct deposits into a SunTrust Bank savings account solely in the name of MC and JC.  The defendant STEPHANIE CARETHERS was not a signatory on the SunTrust savings account.

11.     It was a further part of the scheme that although the defendant STEPHANIE CARETHERS notified Maryland's Division of Vital Records that her father, JC, died on March 7, 2002, she did not notify OPM.  However, OPM learned of JC's death and suspended his retirement annuity benefits in July 2002, after which the defendant STEPHANIE CARETHERS called OPM's Office of Retirement Programs, identifying herself as JC's daughter.  The defendant STEPHANIE CARETHERS requested that survivor annuity benefits application forms be sent to MC, whom she identified as JC's widow, at her (the defendant's) home address, at xxxx Xxxxx Court, Capitol Heights, Maryland.

12.     It was a further part of the scheme that in October 2002 in the District of Columbia and

elsewhere, the defendant STEPHANIE CARETHERS caused an application to be sent to OPM fraudulently requesting survivor annuity benefits for MC, who had, in fact, predeceased her husband and thus was not eligible for survivor annuity benefits, and containing the forged signature of MC, who, at the time of the application, was already deceased. Based on this application and unaware of MC's death, OPM paid approximately $206,982 in survivor annuity benefits to MC. These payments were directly deposited into a SunTrust Bank checking account solely in the name of MC and JC; the defendant STEPHANIE CARETHERS was not a signatory on the SunTrust checking account.

13.     It was a further part of the scheme that in August 2001 (three months after MC's death) and then again in August 2005, in the District of Columbia and elsewhere, the defendant STEPHANIE CARETHERS caused false Address Verification Letters to be returned to OPM containing the forged signature of MC in order to make OPM believe that MC was still alive and entitled to her retirement annuity and the survivorship annuity payments.

14.     It was a further part of the scheme that in December 2005, in the District of Columbia and elsewhere, the defendant STEPHANIE CARETHERS caused a false payment restoration notice to be returned to OPM containing the forged, and notarized, signature of MC in order to make OPM believe that MC was still alive and entitled to her retirement annuity and the survivorship annuity payments.

15.     It was a further part of the scheme that from 2001 to 2010, in the District of Columbia and elsewhere, the defendant STEPHANIE CARETHERS used the fraudulently obtained retirement and survivor payments, that OPM sent after MC's death, to buy items and services for herself and others.

**(Fraud in the First Degree, in violation of Title 22, District of
Columbia Code, Sections 3221(a) and 3222(a)(1)).**

## COUNT TWO

## (BANK FRAUD)

16. From in or about 2002, until in or about May 2010, in the District of Columbia and elsewhere, the defendant, STEPHANIE CARETHERS, devised and intended to devise and aided and abetted in a scheme to obtain money owned by and under the custody and control of SunTrust Bank by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme

17. It was the purpose of the scheme that after her parents' deaths, the defendant STEPHANIE CARETHERS used her parents' SunTrust Bank accounts, which were funded with money stolen from OPM, to withdraw money, pay bills, transfer funds, among other purposes, without authority and right.

### The Scheme

18. Paragraphs 1 through 7 and 9 through 16 of Count One of this Information are realleged, set forth the scheme, and are incorporated by reference as if set out in full.

### Execution of the Scheme

19. Between in or about 2002 and May 2010, in the District of Columbia and elsewhere, the defendant STEPHANIE CARETHERS executed and attempted to execute the scheme as set forth above.

**(Bank Fraud, Causing an Act to Be Done, in violation of**
**Title 18, United States Code, Sections 1344 and 2).**

## COUNT THREE

## (THEFT IN THE FIRST DEGREE)

20. Paragraphs 1 through 7 and 9 through 16 of Count One of this Information are realleged,

set forth the scheme, and are incorporated by reference as if set out in full.

21.     From between in or about 2001, until in or about May 2010, in a continuing course of conduct, in the District of Columbia, the defendant, STEPHANIE CARETHERS, wrongfully obtained property, that is, money, worth in excess of $1,000, that is, approximately $702,949, from OPM with the intent to appropriate the property to her own use and to the use of third persons.

**(Theft in the First Degree, Aiding and Abetting, in violation of Title 22, District of Columbia Code, §§ 3211(b)(2) and 3212(a)).**

CHANNING D. PHILLIPS

United States Attorney
for the District of Columbia

By:    _____
VIRGINIA CHEATHAM
Assistant United States Attorney
DC Bar # 411980
Virginia.cheatham@usdoj.gov
United States Attorney's Office
Fraud and Public Corruption Section
555 4th Street, N.W., Room 5836
Washington, D.C.  20530
(202) 252-7820